IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHINA EXPORT & CREDIT INSURANCE CORPORATION a/s/o ZHEJIANG JINGU COMPANY LIMITED, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) NO. 3:16-cv-00846 ) JUDGE CAMPBELL |
| CARLISLE TRANSPORTATION PRODUCTS INC., CARLISLE COMPANIES, INC., CARLISLE FLUID TECHNOLOGIES, INC., THE CARLSTAR GROUP, LLC and AMERICAN INDUSTRIAL PARTNERS CAPITAL FUND V, L.P., | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

MEMORANDUM

Pending before the Court is Defendant Carlisle Companies, Inc.'s Motion to Dismiss. (Docket No. 30.) For the reasons stated herein, Defendant's Motion is GRANTED in part and DENIED in part. Plaintiff's claim for action on account is DISMISSED.

INTRODUCTION

Plaintiff, a Beijing-based company whose business includes insuring other entities, has filed the instant Complaint in its capacity as subrogee of Zhejiang Jingu Company Limited ("Jingu"), a company that manufactures and sells automotive parts. The parties have stipulated to the dismissal without prejudice of all claims except those against Defendant Carlisle Companies, Inc. Plaintiff's Complaint alleges that, between March 2013 and August 2013, Jingu sold steel wheels and other parts to Defendant for a cumulative total price in excess of $ 1 million dollars. Unbeknownst to

Plaintiff, however, a third party had obtained details of the parties' past transactions, and used those details to send two sets of false wiring instructions to Defendant. Defendant transmitted its payments for the March 2013–August 2013 purchases to the account or acounts that had been identified by the false instructions, but which were not, in fact, affiliated with Jingu. Jingu eventually became aware that its security, and that of its transactions, had been breached. The Complaint alleges that Defendant has never paid Jingu for the relevant goods, and that Plaintiff compensated Jingu for the associated loss under an applicable insurance policy.

Plaintiff, acting as the subrogee of Jingu, filed a Complaint in this Court pleading the following causes of action against Plaintiff and a number of affiliated entities: breach of contract; negligence; conversion; action on account; and unjust enrichment. The parties filed a Notice of Voluntary Dismissal with regard to all parties except Defendant. (Docket No. 34.) Defendant filed the instant motion seeking to dismiss all claims except Plaintiff's claim for breach of contract.

MOTION TO DISMISS

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion couched as a factual allegation need not be accepted as true on a

motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

## NEGLIGENCE

Defendant asks the Court to dismiss Plaintiff's cause of action for negligence on the ground that Defendant did not owe Jingu any duty of care relevant to the underlying situation. To establish the elements of a negligence claim under Tennessee, Plaintiff must show (1) a duty of care owed by the Defendant to Jingu; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, cause. *Green v. Roberts*, 398 S.W.3d 172, 176–77 (Tenn. Ct. App. 2012). Where two parties enter into a contractual arrangement, their obligations to each other generally arise only out of the contract itself. *Permobil, Inc. v. Am. Express Travel Related Servs. Co., Inc.*, 571 F. Supp. 2d 825, 842 (M.D. Tenn. 2008). If a duty to conform to a standard of care exists between the parties irrespective of contract, however, and the defendant is negligent, the damaged plaintiff, generally speaking, may sue in tort. *Silvestro v. Bank of Am., N.A.*, No. 3-13-0066, 2013 WL 1149301, at *4 (M.D. Tenn. Mar. 19, 2013). "[T]he question of whether a defendant owes a duty of care . . . is a question of law to be determined by the courts." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 365 (Tenn. 2009) (citing *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005)). Once a duty is established, the scope of duty and the standard of care are questions of fact to be decided by the trier of fact. *Friedenstab v. Short*, 174 S.W.3d 217, 225 (Tenn. Ct. App. 2004).

Defendant argues that Plaintiff's claim for negligence must fail because it cannot identify a specific statutory or common law cause of action premised on the duty to prevent the "fraudulent cyber activity" of a third party. (Docket No. 1 ¶ 40.) Defendant's characterization of Plaintiff's

3

theory, however, mistakenly assumes that Plaintiff has alleged merely a failure to act to prevent the fraudulent activity of another. *See Giggers*, 277 S.W.3d at 364 (contrasting general duty of care related to affirmative acts to special duties of care that encompass failure to act). By affecting the wire transfers, Defendant did not simply fail to prevent a third party's fraud, but, rather, it engaged in an affirmative act capable of giving rise to a general duty of care in its own right. "As a general rule, persons have a duty to others to refrain from engaging in affirmative acts that a reasonable person should recognize as involving an unreasonable risk of causing an invasion of an interest of another or acts [that] involve[] an unreasonable risk of harm to another." *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008) (quotation marks and citation omitted). A wire transfer of funds is an affirmative act that carries with it a foreseeable risk that the funds might be sent to the wrong account. The situation described by the Complaint therefore falls squarely within Tennessee's general duty of care. Whether Defendant breached that duty is a question of fact.

Defendant argues next that Plaintiff's negligence claim is barred by the Economic Loss Doctrine. The Economic Loss Doctrine is a judicially created principle that reflects an attempt to maintain separation between contract law and tort law by barring recovery in tort for purely economic loss in certain cases. *N5ZX Aviation, Inc. v. Bell*, No. 3-11-0674, 2011 WL 5520973, at * 4 (M.D. Tenn. Nov. 14, 2011). "Tennessee's highest court has never addressed whether the economic loss doctrine applies outside of the products liability context." *Ham v. Swift Transp. Co.*, 694 F. Supp. 2d 915, 921 (W.D. Tenn. 2010) (discussing *Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 488 (Tenn. 2009)). Nevertheless, courts have sometimes suggested that the doctrine applies at least to all "cases involving the sale of goods." *SPO Go Holdings, Inc. v. W*

4

*& O Constr. Co., Inc.*, No. 1-16-0010, 2016 WL 2607005, at *4 (M.D. Tenn. May 6, 2016) (quoting *Lick Branch Unit, LLC v. Reed*, No. 3:13-cv-203, 2014 WL 546696, at *16 (E.D. Tenn. 2014)).

Although this case does involve the sale of goods, it is otherwise highly distinguishable from a products liability action. It does not involve any defect of design or manufacture, or in fact any claim predicated on any feature of a good or product. *Cf. N5ZX Transp.*, 2011 WL 5520973, at *4 (holding that Economic Loss Doctrine did not apply to claims arising out of negligent inspection and repair by sellers of an airplane). The Court is therefore reluctant to apply a bar that the Tennessee Supreme Court has endorsed only in the products liability setting. Moreover, the Court notes that the judicially created Economic Loss Doctrine is not the only mechanism for policing the boundaries between commercial liability and tort. *See, e.g.*, *Wright v. Citizen's Bank of E. Tenn.*, 640 F. App'x 401, 407–10 (6th Cir. 2016) (holding that common law claims against bank for negligent preparation and issuance of wire transfer were displaced by statutory adoption of Article 4A of the Uniform Commercial Code). Because Defendant relies only on the Economic Loss Doctrine, and Tennessee case law does not establish that that doctrine applies to this case, the Court will not apply it here.

## CONVERSION

Defendant argues that Plaintiff's claim for conversion should be dismissed because the facts Plaintiff has pled at most suggest that Defendant has failed to pay a debt, not that it has engaged in conversion of property. Under Tennessee law, conversion is the appropriation of another's property to one's own use or benefit, in exclusion or defiance of the owner's rights. *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 613 (W.D. Tenn. 2011). A party claiming conversion must prove (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights. *Id.* "The

intention necessary to establish conversion 'does not necessarily have to be a matter of conscious wrongdoing, but can merely be an exercise of dominion or control over the property in such a way that would be inconsistent with the owner's rights and which results in injury to him.'" *Arvest Bank v. Byrd*, 814 F. Supp. 2d 775, 792 (W.D. Tenn. 2011) (quoting *Thompson v. Thompson*, No. W2008–00489–COA–R3–CV, 2009 WL 637289, at *14 (Tenn. Ct. App. Mar. 12, 2009)).

Plaintiff's Complaint alleges that Defendant accepted and received Jingu's goods and sold them for profit without ever completing payment for them, and specifically takes issue with the fact that Defendant did not return the goods to Jingu. (Docket No. 1 ¶¶ 11, 24, 46–47.) The sale of the goods was an intentional exercise of dominion over them that was inconsistent with any claim to ownership by Jingu. While treating the matter solely as one of an outstanding debt may have been one option available to Jingu, Defendant has failed to establish that Jingu could not have instead chosen to assert ownership over the goods in light of Defendant's failure to pay for them. Accordingly, Plaintiff has adequately pled a cause of action for conversion.

## ACTION ON ACCOUNT

Defendant argues that Plaintiff's claim for action on account should be dismissed because, insofar as Tennessee law recognizes such a cause of action, Plaintiff has failed to plead its elements. Although cases discussing action on account outside the context of Tenn. Code Ann. § 24-5-107—which does not apply here—are few and far between, the parties appear to agree that the elements for such a claim are "(1) a series of prior dealings between the parties on an open account, (2) an agreement between the parties concerning the amount owed on the account, and (3) a specific and unconditional [acknowledgment] of the obligation by the party to be charged." *Hudson Bros., Inc. v. Cook*, No. 01-A-019008CV00276, 1991 WL 148035, at *4 (Tenn. Ct. App. Aug. 7, 1991)

6

(citing *So. Hous. Co. v. Morton*, 242 S.W.2d 843, 850–51 (Tenn. Ct. App. 1950)). For the latter two of these elements—agreement between the parties on the amount owed and unconditional acknowledgment of the obligation by Defendant—Plaintiff relies only the fact that it invoiced Defendant for the relevant amounts and Defendant attempted to pay them without objection. Attempting to pay an invoice, however, is not tantamount to unconditionally acknowledging an obligation that would survive the payment attempt. Plaintiff therefore has not pled the elements sufficient to support a claim for action on account, insofar as such cause of action exists under Tennessee law.

## UNJUST ENRICHMENT

Defendant argues that Plaintiff's motion for unjust enrichment should be dismissed because a valid contract existed between the parties at all times relevant to the transactions giving rise to this litigation. This Court has held that, while a plaintiff cannot recover under a theory of unjust enrichment when an express contract governs the parties' relationship, a plaintiff may nevertheless properly plead alternative theories of liability, including contract and unjust enrichment theories. *In Re Nissan N. Am., Inc. Odometer Litig.*, 664 F. Supp.2d 873, 894–95 (M.D. Tenn. 2009). The Court therefore finds that, for purposes of a Motion to Dismiss, Plaintiff may plead unjust enrichment as an alternative to its breach of contract claim.

## ATTORNEY'S FEES

Finally, Defendant asks the Court to dismiss Plaintiff's requests for attorney's fees. None of the Plaintiff's references to attorney's fees, however, amount to an assertion of an independent cause of action. Rather, each paragraph cited by Defendant at most suggests that attorney's fees might be cognizable as part of or ancillary to Plaintiff's damages. (Docket No. 31 at 16 (citing

Docket No. 1 ¶¶ 14, 28, 34, 38, 43, 48).)  Resolving such issues on a Rule 12(b)(6) motion, which is merely intended to test whether Plaintiff has pled claims on which any relief can be granted, would be premature.

## CONCLUSION

For these reasons, Defendant's Motion to Dismiss (Docket No. 30) is GRANTED in part and DENIED in part.  Plaintiff's claim for action on account is DISMISSED.

It is so ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE